## Marple v. Cooke, Appellant.

*Municipalities—Contracts—Personal liability of city official—Principal and agent—City of Philadelphia—Act of April 21, 1858, Sec. 5, P. L. 385.*

Under the Act of April 21, 1858, Sec. 5, P. L. 385, which provides that persons claiming against the City of Philadelphia on "unauthorized debts or contracts, may recover against the person or persons illegally making the same," the Director of the Department of Public Works of Philadelphia is personally responsible for the price of material ordered by him and furnished by a contractor and used by the city, where there was no contract in writing as provided by the Act of June 1, 1885, Art. 14, P. L. 37, and where the contract for the material was not authorized by law or ordinance, and no appropriation to pay for it had been previously made by councils.

Assumpsit is the proper remedy to enforce such statutory liability, and the act itself need not be specifically pleaded.

Argued Oct. 10, 1916. Appeal, No. 384, Oct. T., 1915, by defendant, from judgment of Municipal Court, Philadelphia Co., July T., 1915, No. 59, for plaintiff on case tried by the court without a jury in suit of Nathan Marple, Lewis Marple and Alfred C. Marple, Copartners, trading as Nathan Marple & Sons, v. Morris L. Cooke. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit for materials furnished to the City of Philadelphia.

The case was tried by the court without a jury.

GILPIN, J., found as follows:

Plaintiffs seek to recover from defendant, who is director of the Department of Public Works of the City of Philadelphia, the sum of four hundred twenty dollars ($420), with interest from October 7, 1912, for certain awnings, curtains, gonfalons, etc., which plaintiffs sold and delivered to defendant and erected at his request.

Plaintiffs claim that the defendant, while director of the Department of Public Works, on his own behalf and

without any warrant or authority from the municipal government of the City of Philadelphia, requested the plaintiffs to submit a bid or estimate for furnishing and erecting all the curtains, awnings, gonfalons, for the booths built to shelter a water conservation exhibit, which was planned, managed and maintained by defendant from October 7, 1912, to November 9, 1912.

The defendant denied that he owed the plaintiffs anything, averring that they sold the defendant nothing whatever and that the goods were not delivered to the defendant, but to the City of Philadelphia and for its use exclusively.

The defendant agreed of record that "the material was furnished to the water exhibit for the City of Philadelphia, was formally installed and the amount claimed is the amount bid for that work to the City of Philadelphia."

Counsel for plaintiffs based their right to recover from the defendant on Section 5 of the Act of April 21, 1858 (P. L. 385), which is as follows:

"Section 5: That no debt or contract hereafter incurred or made shall be binding on the City of Philadelphia unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by Councils; Provided, that persons claiming unauthorized debts or contracts may recover against the person or persons illegally making the same."

It is unquestioned that there is no ordinance of councils in existence authorizing the furnishing of the goods claimed for on behalf of the city or making an appropriation sufficient to pay for the same, so the only question before the court is, Was the defendant the person illegally making the contract for the goods furnished by the plaintiffs?

The oral testimony of the plaintiffs' witness, standing alone, was not, in the opinion of the court, sufficient to sustain their claim against the defendant and establish his individual liability.

At the close of the direct examination of Alfred C. Marple, one of the plaintiffs, their counsel offered in evidence defendant's answer filed in the case, directing the court's attention to paragraph four of the answer, which admits paragraph four of the plaintiffs' statement, which is as follows:

"Four: The said materials and services were specified in detail to plaintiffs, by defendant or his agents, by means of plans or specifications now on file in the City Architect's office and in the office of the Bureau of Water, under the custody and in the possession of the defendant or his agents. Plaintiffs were furnished by defendant or his agents with a copy of said plans, which was worn out since or destroyed during the progress of the plaintiffs' work in and about the said exhibit. Plaintiffs cannot therefore furnish a copy of the plans, but aver that a true and correct copy of the same is on file in the suit of Martin H. Walrath versus Morris L. Cooke, in the Court of Common Pleas No. 1 of Philadelphia County, of June Term, 1913, No. 537, in the Prothonotary's office. The original plans in the custody and possession of the defendant are marked as follows:

"Plan for          Water Conservation Exhibit to be constructed by Bureau of Water—

"Sheet No. 24 E 709

"Designed by                    Approved Sept. 18, 1912.
                "William E. Groben, S. M. Van Loan,
                "Architect, Dept. P. W. Acting Chief,
                        "Bureau of Water."

Counsel for plaintiffs also directed the court's attention to paragraphs five and six, of defendant's answer, responding to like numbered paragraphs of plaintiffs' statement, the said paragraphs of the answer being as follows:

"Five: It is admitted that plaintiffs' bid was accepted by defendant or his agent, but solely for and on behalf of the City of Philadelphia, and not for or on behalf of the defendant."

220, (1916).] Statement of Facts—Arguments.

"Six: It is true that plaintiffs were ordered to proceed with the delivery of the goods as averred in paragraph 6, but the order was given by the officers of the City of Philadelphia solely for and on behalf of the city."

As this contract with plaintiffs was entirely without authorization and as there was no appropriation made to pay the debt created thereby it is clear that the contract was illegal and imposed no liability upon the city; but it is equally clear that the admission of defendant in the sixth paragraph of the answer fixes on him the liability for the debt incurred as the person illegally incurring the debt on behalf of the city as provided in the 5th Section of the Act of 1858 above quoted.

The court, therefore, finds for the plaintiffs in the sum of $497, judgment to be entered sec. reg.

*Error assigned* was the judgment of the court.

*Thomas Raeburn White,* for appellant.—Defendant was not responsible under the Act of 1858, for the price of material delivered, even upon the facts assumed by the court below: Stone v. Bank of Commerce, 174 U. S. 412; Hepburn v. Philadelphia, 149 Pa. 335; Smith v. Kaufman, 30 Pa. Superior Ct. 265; Miller v. Philadelphia, 231 Pa. 196; McManus v. Philadelphia, 201 Pa. 619; Smart v. Philadelphia, 205 Pa. 329; O'Rourke v. Philadelphia, 211 Pa. 79; Miller v. Philadelphia, 231 Pa. 196.

A party seeking to recover a penalty must plead the statute under which he seeks to recover: Mitchell Coal & Coke Co. v. Pennsylvania Railroad Company, 241 Pa. 536.

*Edward B. Martin,* for appellees, on the assumpsit form of the case, cited the Practice Act of 1887; Com. v. Magee, 24 Pa. Superior Ct. 329; Marston v. State Hospital, 18 Pa. Superior Ct. 547, 4 Cyc. 326, note 41; on the statutory liability, Philadelphia v. Wister, 17 Philadelphia 13; Windrim v. Philadelphia, 9 Philadelphia 550; Ross v. Philadelphia, 115 Pa. 222.

OPINION BY KEPHART, J., December 18, 1916:

The general rule is well settled, and constantly enforced, that one who makes a contract with a municipality is bound to take notice of the limitations on its powers to contract, and also of the power of the particular officer or agency to make the contract on its behalf: McQuillan on Municipal Corporations, Vol. 3, Sec. 1166. Persons dealing with a municipality, through its agent, must know the extent of the agent's authority, and unless the agent specifically engages to become liable on the contract, he cannot be as a general rule charged with responsibility. This rule, as it applies to the officers and agents of the City of Philadelphia, has been considerably modified by the Act of April 21, 1858, P. L. 385, Section 5 of which is as follows: "That no debt or contract hereafter incurred or made shall be binding upon the City of Philadelphia unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by councils; Provided, that persons claiming unauthorized debts or contracts may recover against the person or persons illegally making the same." The act not only protected honest claimants, but it was likewise a protection to the municipality against the unauthorized acts of its officers. As stated by Judge THAYER, "It furnishes the best protection which it is possible to devise, against the improvidence, the incompetency, and the dishonesty ......which are perpetually hiding themselves in the recesses of great corporations." Later, the Act of June 1, 1885, P. L. 37, 51 Art. 14, required all contracts to be in writing, signed and executed in the name of the city by the proper officers. This act adds another condition precedent to the life of the contract. It is not inconsistent with the Act of 1858, and does not repeal it. The requirements of both of these acts are mandatory. The city may invoke their protection when contracts have been attempted by its officers, contrary to their provision, but the officer or agent of the city, who illegally

creates the obligation, cannot avail himself of the acts to be relieved of the liability imposed on him.  He cannot assert that because of his failure to comply with the law there was no meeting of the minds of the parties nor no expressed intention on both sides to make a contract, and hence no "contract or unauthorized debt," which under the acts, might be enforced against the officer or agent. The relation created by the Act of 1858 is somewhat similar to the common law liability of an agent who exceeds the authority conferred upon him by a principal. The officer, under the Act of 1858, becomes liable, because under these circumstances, the party dealing with the city has no recourse against the city, and the act recognizes that justice requires that the person who occasioned the loss should be made responsible.  The act takes from the city's agent the protection given by the common law.  It appears from the record that the loss complained of was occasioned by and through the orders of the defendant; that the contract was not in writing, and council afterwards refused to make any appropriation to meet the expenditure.  It does not appear that the plaintiff knew of the defendant's want of authority. It is questionable, even if he had known, whether the defendant could escape liability.  It is quite true that the city received the benefit of the contract, but this does not relieve the defendant from liability.  The statement embraced all the elements necessary to recover under the Act of 1858, and the act in name need not be specifically pleaded.  Assumpsit is the proper remedy in this State to enforce such statutory liability.

The assignments of error are overruled, and the judgment of the court below is affirmed.